**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

HALLY H.,[1]                                  )
                                              )    No. 22 CV 7215
                        Plaintiff,            )
                                              )
           v.                                 )    Magistrate Judge Young B. Kim
                                              )
FRANK BISIGNANO, Commissioner                 )
of Social Security,                           )
                                              )    August 11, 2025
                        Defendant.            )

### MEMORANDUM OPINION and ORDER

Hally H. seeks social security income benefits ("SSI") asserting that he is disabled by bipolar disorder, depression, anxiety, ADHD, and behavioral dysregulation, among other conditions. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Hally's remand request is granted:

### Procedural History

Hally filed his SSI application in January 2021 claiming disability onset on January 27, 2020. (Administrative Record ("A.R.") 15.) After his application was denied initially and upon reconsideration at the administrative level, (id. at 15, 67-81, 84-94, 103-10), he sought and was granted a hearing before an Administrative Law Judge ("ALJ"), (id. at 132-34). Hally appeared with his attorney at an April 2022

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Hally's first name and last initial in this opinion to protect his privacy to the extent possible.

telephonic hearing at which he and a vocational expert ("VE") testified. (Id. at 38-66.) The ALJ concluded in May 2022 that Hally is not disabled. (Id. at 15-31.) The Appeals Council denied Hally's request for review, (id. at 1-6), and Hally filed this lawsuit seeking judicial review. The parties then consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 7).

## Analysis

Hally argues that the ALJ failed to: (1) develop a complete record regarding Hally's mental health treatment at Kane County Diagnostic Center ("KCDC"), where he received regular treatment for more than three years; and (2) properly evaluate the opinion of consultative psychological examiner Dr. Sanka Samardzija. (See generally R. 14, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and explain "how the evidence . . . is 'sufficient to allow [the] reviewing court[] to assess the validity of

2

the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin,* 743 F.3d 1118, 1121 (7th Cir. 2014)).  Viewing the arguments and record under this standard, remand is warranted here.

## A.     Duty to Develop Record

Hally argues that the ALJ "ignor[ed] the obvious gap consisting of [his] primary mental health treatment notes" from KCDC for the periods from December 2017 to February 2020, from October 2020 to June 2021, and then from September 2021 to March 2022, thereby breaching the duty to develop the complete medical record.  (R. 14, Pl.'s Mem. at 9-12.)  While a disability claimant "bears the burden of proving disability," the ALJ has a duty at the hearing "to develop a full and fair record."  *Nelms v. Astrue,* 553 F.3d 1093, 1098 (7th Cir. 2009) (citations omitted). Indeed, because disability proceedings are "inquisitorial rather than adversarial," an ALJ must "investigate the facts and develop arguments both for and against granting benefits."  *Michael S. v. Kijakazi,* No. 21 CV 2169, 2022 WL 16744195, at *4 (N.D. Ill. Nov. 7, 2022) (quoting *Sims v. Apfel,* 530 U.S. 103, 111 (2000)).  "Specifically, the ALJ must develop a claimant's 'complete medical history'" and "'make every reasonable effort' to help the claimant get reports from . . . medical sources."  *Id.* (quoting 20 C.F.R. § 404.1512(b)(1)).

That said, the claimant has "the principal duty" to submit medical evidence, and the ALJ then "supplement[s]" the record as needed by "mak[ing] an initial request" to medical sources and following up if required.  *Bertaud v. O'Malley,*

3

88 F.4th 1242, 1244-45 (7th Cir. 2023) (comparing 20 C.F.R. § 404.1512(a)(1) with *id.* § 404.1512(b)(1)). Where, as here, the claimant is represented by an attorney, the ALJ's duty to develop the record is not as great as when a claimant proceeds *pro se.* *Id.* at 1245. And "the reviewing court defers to the ALJ on the question of how much evidence must be gathered." *Id.* ("Deference comes from the practical reality that no record is complete—one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on." (internal quotations and citations omitted)).

The ALJ erred here by not securing Hally's mental health treatment notes from KCDC. (See, e.g., A.R. 342, 439, 445, 451.) Although "a represented client" like Hally "will not succeed on a duty-to-develop claim by arguing merely that the ALJ should have uncovered missing evidence," *Bertaud*, 88 F.4th at 1245, that is not the case here. Shortly before the April 2022 telephonic hearing, KCDC's psychology intern Rose Cook and supervising psychologist Dr. Ashley VanOpstall submitted an opinion confirming the frequency and duration of Hally's mental health treatment and indicating that he had "made progress toward his goals in the past" but "recently demonstrated limited progress." (R. 14, Pl.'s Mem. at 6 (citing A.R. 950).) They listed Hally's diagnoses as "opio[i]d use disorder, on maintenance therapy" and "unspecified anxiety disorder" and medications as suboxone, Vyvanse, and lithium. (A.R. 950.) And while they noted that Hally had consistent mental status exams, (id.), they also noted the following symptoms: feelings of guilt or worthlessness; impairment of impulse control; difficulty thinking or concentrating; substance dependence; intense

4

and unstable interpersonal relationships and impulsive and damaging behavior; hyperactivity; deeply ingrained, maladaptive patterns of behavior; and easy distractibility. (Id. at 951.) They also clarified that they left blank a portion of the opinion form because their treatment of Hally did not include "any diagnostic assessment or treatment . . . related to employment" or "determination regarding impairments or limitations." (Id. at 949.)

At the administrative hearing, Hally's attorney informed the ALJ that she had had "quite a lot of difficulty . . . getting the [underlying] mental health treatment notes from [KCDC]," and requested time after the hearing to continue trying to access the records. (R. 14, Pl.'s Mem. at 9 (citing A.R. 43).) The ALJ granted her request. (Id.) But despite "requests made on numerous occasions," (see A.R. 186 (noting requests made by certified mail and fax on five occasions in March through May 2022)), KCDC refused to produce Hally's longitudinal mental health treatment notes, (R. 14, Pl.'s Mem. at 11). Hally's attorney then asked the ALJ for help by issuing a subpoena for the records, but the ALJ declined on grounds that the attorney's request "did not set forth the requirements of issuance of a subpoena, such as facts to be proven by such evidence and why they could not be proven without a subpoena." (R. 14, Pl.'s Mem. at 9 (citing A.R. 15).) However, in her request to the ALJ, the attorney noted the five occasions on which she had requested Hally's treatment notes without success and represented that the KCDC notes "document [Hally's] mental health treatment [and] are probative and supportive of the limitations caused by his ongoing mental health impairments." (A.R. 186.) Accordingly, the ALJ's refusal to

grant Hally's request to subpoena the documents was likely improper, but even if the request had been properly denied, the ALJ still had a duty to address the gap in evidence of more than three years' worth of mental health treatment notes from KCDC. (See R. 14, Pl.'s Mem. at 11.)

This is particularly true here because the ALJ rendered certain findings without having the full picture regarding those records. Indeed, the ALJ deemed "persuasive" Cook and Dr. VanOpstall's statement that Hally's mental status exams were consistently within normal limits, (see A.R. 29, 950), while assigning only "limited persuasive value" to other aspects of their report—namely, the frequency and duration of Hally's treatment with KCDC, "recently demonstrated *limited* progress," prescribed medications, and signs and symptoms—because "actual treatment records" were not submitted, (id. at 29 (emphasis added)). In other words, instead of abiding by the duty to develop and assess a complete medical history, the ALJ drew unfavorable inferences against Hally from the absence of records that the ALJ knew existed yet declined to subpoena. To be clear, Hally is not asking the ALJ to "uncover[] missing evidence" or "[seek] out all possibilities," *Bertaud*, 88 F.4th at 1245, but rather to develop the record as to his treatment notes to ensure the ALJ's inferences are supported by substantial evidence.

The record in this case and Hally's testimony at the hearing identify a gap in evidence. Starting with the objective medical evidence, emergency room and hospital records show that Hally presented for substance abuse and psychiatric symptoms in January 2020 and August 2021. (See, e.g., A.R. 356, 362 (January 2020 emergency

6

department records indicating Hally was "poorly responsive" after heroin overdose for which police administered three doses of Narcan, documenting history of substance abuse and major depression, and recording psychotropic medications, including Effexor and Wellbutrin), 492-97, 746, 932-41 (August 2021 hospitalization after Hally was reportedly digging in mulch looking for deceased brother; records show Hally thought police were "out to get" him, presented with slowed speech and movement, odd affect, slightly tangential thought processes, guarded behavior, paranoid delusions, irritable mood, and impaired concentration, insight, and judgment, and was diagnosed with bipolar disorder, current episode mixed, severe, with psychotic features, and opioid abuse).) The medical record also includes primary care notes indicating the same. (See, e.g., id. at 396-99 (partially legible treatment notes from June 17, 2020 visit with primary care provider revealing "pressured and rapid speech" with "flight of ideas" and starting Hally on lithium to treat bipolar disorder), 400-02 (partially legible primary care notes from June 15, 2020 documenting history of heroin and other substance addiction and treatment for same, including inpatient treatment and counseling). Hally also testified at the administrative hearing that he has struggled with substance disorder—including abuse of benzodiazepines, crack cocaine, opioids, and alcohol—since about age 16. (Id. at 46, 479.) To treat his symptoms, he meets weekly with a peer counselor at Greater Elgin Family Health on Mondays, visits his therapist at KCDC on Tuesdays, and attends AA meetings three times a week. (Id. at 45-46.) His longest period of sobriety lasted about six months. (Id. at 46.) Hally got a job and tried maintaining a

7

positive mindset but "hit a wall" and became "very depressed," leading him to a suicide attempt, resulting in another hospitalization in August 2021. (Id. at 44-45.) Hally said he has difficulty getting out of bed, caring for himself, sleeping consistently, and managing racing thoughts and anger, which makes it difficult for him to keep a job. (Id. at 47-49.) But treatment notes reflecting his mental health providers' management of his symptoms and medications are mostly absent from the record.

Thus, "an ambiguity [in the record] warranted further development of the record by the ALJ." *See Michael S.*, 2022 WL 16744195, at *4. To be sure, "the cure for [the] perceived ambiguit[y in the opinion] was for the ALJ to seek clarification from [the mental health provider], not to reject [it] out of hand." *Hoffswell v. Berryhill*, No. 17 CV 490, 2018 WL 3830060, at *2-3 (N.D. Ill. Aug. 22, 2018). The court cannot say this error is harmless because the ALJ did not have access to the mental health treatment records that may have substantiated Cook's and Dr. VanOpstall's opinions, leading the ALJ to assign greater weight to their opinions, to prescribing a more restrictive RFC, and ultimately to a different outcome. *See Michael S.*, 2022 WL 16744195, at *6.

## B. Consultative Psychological Examiner's Opinion

Hally next argues that the ALJ did not properly evaluate the opinion of consultative psychological examiner Dr. Samardzija. (R. 14, Pl.'s Mem. at 12-14.) During Dr. Samardzija's June 2021 evaluation, Hally reported that his difficulty regulating behavior makes it impossible for him to maintain employment. (Id. at

478.)  Hally represented that he has been hospitalized four to five times in the past five years because of psychiatric symptoms, several of which involved suicidal ideation or attempts, and has been jailed six times.  (Id. at 479.)  His parents both struggled with addiction, and his brother died at a young age from seizures.  (Id.)  Hally completed 11th grade and took special education classes during elementary school.  (Id. at 479-80.)

Dr. Samardzija observed that Hally seemed "somewhat downhearted" and expressed feelings of "hopelessness and helplessness" during her examination.  (Id. at 480.)  Hally made one error in calculating numbers, but his general knowledge, judgment, and abstract thinking were good.  (Id. at 480-81.)  His orientation, appearance, and behavior were adequate or appropriate.  (Id. at 481.)  But given his long history of substance abuse, dysfunctional family, dysregulated mood, inability to sleep consistently, and traumatic events, Dr. Samardzija opined that Hally suffered: (1) an impaired ability to relate to others; (2) an impaired ability to maintain attention required to perform simple, repetitive tasks and sustained concentration, persistence, and pace ("CPP"); and (3) poor ability to withstand stress and pressures associated with day-to-day work.  (Id. at 482.)  Dr. Samardzija listed Hally's diagnoses as PTSD with dissociative symptoms, moderate bipolar I disorder with most recent episode manic, generalized anxiety disorder, moderate alcohol use disorder in sustained remission, and severe opiate use disorder on maintenance therapy.  (Id.)

The ALJ found Dr. Samardzija's opinion "not persuasive" because she based it on one consultative examination rather than on "a longitudinal basis."  (Id. at 28.)

9

The ALJ also faulted Dr. Samardzija for not "offer[ing an] opinion regarding the impact of substance and alcohol abuse" on Hally's functioning given "this has been the primary focus of treatment" for him. (Id.) The ALJ also dismissed the opinion to the extent Dr. Samardzija used "good," "impaired," and "poor" to describe Hally's functioning, rather than the five-point scale—"none," "mild," "moderate," "marked," and "extreme"—used by the Social Security Administration. (Id.)

Hally argues that the ALJ's evaluation of Dr. Samardzija's opinion is flawed for several reasons. (R. 14, Pl.'s Mem. at 12-14.) First, Hally points out that the ALJ found state agency reviewing psychologist Dr. Donna Galassi-Hudspeth's opinion "persuasive" even though she never examined Hally, while at the same time finding Dr. Samardzija's opinion "not persuasive" because she examined him once. (Id. at 13 (citing A.R. 27-28).) The ALJ never explained the inconsistency in his logic and, as a result, the court cannot trace his path of reasoning. (See A.R. 27-28); *see also Daquan S. v. Saul*, No. 19 CV 7804, 2021 WL 353999, at *5 (N.D. Ill. Feb. 2, 2021) (remanding where ALJ failed to explain why she gave great weight to one expert who used a checkbox form while discounting the opinion of another expert who did the same).

Second, the ALJ failed to acknowledge the consistency between Dr. Samardzija's opinion that Hally had impaired CPP abilities limiting his ability to perform simple, repetitive tasks, (A.R. 482), and Dr. Galassi-Hudspeth's opinion that Hally was moderately limited in his abilities to carry out detailed instructions and maintain attention and concentration for extended periods, restricting him to "one to two step tasks which can be learned in one to three months on the job," (id. at 92-93).

10

Instead, the ALJ rejected the one- to two-step limitation because "the state agency did not define or explain 1-2 step tasks" and Hally could perform daily activities such as personal care and food preparation. (Id. at 28; but see id. at 48 (Hally's testimony that he is able to "do things like personal care" about "once a week" and microwave "stuff" for meals).) The ALJ's analysis does not "say enough" to satisfy the court that the ALJ adequately considered "the totality" of Hally's limitations, including those in CPP. *See Lothridge*, 984 F.3d at 1233.

Third, Hally challenges the ALJ's rejection of Dr. Samardzija's opinion because she did not opine on the impact that Hally's substance disorders had on his functioning. (A.R. 28.) Hally questions why Dr. Samardzija would have issued such an opinion given that she diagnosed him with moderate alcohol use disorder "*in sustained remission*" and severe opiate use disorder "*on maintenance therapy*" and did not note any intoxication at the time of the evaluation. (Id. (citing id. at 482 (emphasis added)).) Regardless, the objective medical evidence suggests that Hally suffered psychosis even when he was not intoxicated. (See R. 14, Pl.'s Mem. at 14 (citing A.R. 497 (August 2021 emergency department record noting "ongoing behavioral issues while not intoxicated," noting "concern for possible psychosis")).) And to the extent the ALJ discounts Dr. Samardzija's opinion because of the limited record on this issue, (see A.R. 29), she cannot be blamed for the ALJ's failure to develop the longitudinal record from KCDC, as discussed.

The government tries to salvage the ALJ's evaluation of Dr. Samardzija's opinion by suggesting that it is inconsistent with a second consultative psychological

11

evaluation the ALJ ordered six months after Dr. Samardzija issued her opinion. (See R. 20, Govt.'s Mem. at 5.) Dr. David NieKamp performed Hally's second evaluation in December 2021. (A.R. 784-91.) In terms of mood and affect, Hally reported crying spells, easy irritation, sleeping or staying awake more than 24 hours at a time, and a history of manic phases and poor self-care. (Id. at 785.) Dr. NieKamp observed that Hally's behavior was "congruent with his commensurate reported symptoms during the interview." (Id.) Hally then underwent assessments like those Dr. Samardzija conducted six months earlier, and Dr. NieKamp concluded:

> Hally displayed intact orientation to person, place, time, and situation.
> Hally evidenced no abnormality of observed posture, and his remote and
> immediate memory seemed intact. He displayed appropriate thought
> processes for a person of his age. Generally speaking, Hally's cognitive
> functions appear to be operating within expected developmental level.
> Hally's reported psychological symptoms and behavioral history
> currently appear to be commensurate with bi-polar disorder.

(Id. at 788.) Dr. NieKamp did not provide any detail as to the severity of Hally's bipolar disorder. (See id.) Nor did he discuss Hally's functioning capacity beyond cognitive functioning. (See id.) When evaluating the opinion evidence, the ALJ did not discuss Dr. NieKamp's opinion or assign any level of persuasiveness to it. (See id. at 27-29.) As such, the government cannot save the ALJ's evaluation of Dr. Samardzija's opinion by referring to Dr. NieKamp's. Accordingly, remand is also warranted as to the ALJ's evaluation of Dr. Samardzija's opinion.

## Conclusion

For the foregoing reasons, Hally's remand request is granted, and this matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate**